## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE: | : | Chapter 7 |
|  | : | Case No. 08-12264-JTD |
| AMC INVESTORS, LLC, *et al.*, | : | (Jointly Administered) |
|  | : |  |
| Debtors. | : |  |
|  | : |  |
| ———————————————————— | : | Adv. Pro. No. 11-52317-JTD |
|  | : | Adv. Pro. No. 11-52318-JTD |
| EUGENIA VI VENTURE HOLDINGS, LTD, *et al.,* | : |  |
|  | : |  |
| Plaintiff-Appellants, | : |  |
| v. | : | Civ. No. 22-179-RGA |
|  | : | Civ. No. 22-180-RGA |
| MAPLEWOOD MANAGEMENT LP, *et al.,* | : |  |
|  | : |  |
| Defendant-Appellees. | : |  |

## MEMORANDUM OPINION

Mark D. Collins, Marcos A. Ramos, Cory Kandestin, Richards, Layton & Finger, P.A., Wilmington, DE, Mitchell A. Karlan, Paul J. Kremer, Gibson, Dunn & Crutcher LLP, attorneys for plaintiff-appellants, Eugenia VI Venture Holdings, Ltd., for and on behalf of Debtors AMC Investors, LLC and AMC Investors II, LLC.

Curtis Miller, Daniel B. Butz, Jonathan M. Weyland, Morris Nichols, Arsht & Tunnell LLP, Wilmington, DE; James A. Bombulie, Dustin B. Hillsley, Akerman, LLP, Miami, FL; Brian P. Miller, King & Spalding LLP, Miami, FL, attorneys for defendant-appellees, Maplewood Management, L.P., MapleWood Holdings LLC, MapleWood Partners LP, Robert V. Glaser, and Robert J. Reale.

January 18, 2024

*Richard G. Andrews*

**ANDREWS, UNITED STATES DISTRICT JUDGE:**

This matter arises from the chapter 11 cases of AMC Investors, LLC ("Investors") and

AMC Investors II, LLC ("Investors II," and together with Investors, the "Debtors") and two

related adversary proceedings[1] filed by plaintiff Eugenia VI Venture Holdings, Ltd. (together with

Debtors, "Eugenia") derivatively on behalf of the Debtors, against defendants Maplewood

Management, L.P., MapleWood Holdings LLC, MapleWood Partners LP, Robert V. Glaser, and

Robert J. Reale (together, "Defendants") who were at all relevant times officers, directors, and/or

shareholders of AMC Computer Corp. ("Computer"). The Adversary Proceedings allege breaches

of fiduciary duties and aiding and abetting breaches of fiduciary duties in connection with the

Defendants' management of Computer, a company in which Debtors were shareholders.

Before the Court is Eugenia's appeal of the Bankruptcy Court's Order (Adv. Proc. No. 11-

52317-JTD, D.I. 314; Adv. Proc. No. 11-52318-JTD, D.I. 269) and accompanying Opinion, *In re

AMC Inv'rs, LLC*, 637 B.R. 43 (Bankr. D. Del. 2022), granting summary judgment in favor of

Defendants based on their affirmative defenses, including statute of limitations, *res judicata*, and

collateral estoppel, and dismissing the underlying adversary proceeding complaints with prejudice.

For the reasons set forth herein, the Order is affirmed.

## I.   BACKGROUND

### A.   The Parties

Computer was a hardware and services company. Debtors Investors and Investors II were

formed in 2000 and 2001, respectively, for the sole purpose of effectuating a private equity

---

[1] *See* Adv. Proc. Nos. 11-52317-JTD and 11-52318-JTD (together, the "Adversary Proceedings" or the "Present Action"). All adversary docket references are to *Eugenia VI Venture Holdings, Ltd. v. MapleWood Holdings LLC*, Adv. Proc. No. 11-52317-JTD, cited herein as "Adv. D.I. __." The appendix filed in support of Eugenia's opening brief (D.I. 22, 24-28) is cited herein as "APP__," and the appendix filed in support of Defendants' answering brief (D.I. 32-37) is cited herein as "B__."

investment in Computer. The related funds that invested in Computer through the Debtors are

MapleWood Equity Partners, LP, and MapleWood Equity Partners (Offshore) Ltd. ("MapleWood

Offshore"). Eugenia's affiliated entity, Casita L.P. ("Casita"), invested $25 million into

MapleWood Offshore. (B000292). Casita also directly invested another $2.5 million into

Computer via Investors. (B000473). In exchange for their investments, Debtors received stock in

Computer. Investors has five members: Casita (Eugenia's affiliate), General Electric Capital

Corporation, Emirates Insurance Company, MapleWood Equity Partners LP, and MapleWood

Offshore. Investors II has two members: MapleWood Equity Partners LP, and MapleWood

Offshore. Casita is the majority shareholder of MapleWood Offshore, which is a member of

Investors and Investors II.

On September 4, 2001, Eugenia entered into a revolving line of credit with Computer

pursuant to which the company was allowed to borrow up to $2 million at any given time to

finance forecasted future sales of computer equipment. Subsequently, Eugenia and Computer

entered into a restated credit agreement by which Eugenia agreed to lend Computer up to $16

million to finance its operations (the "Credit Agreement"). Computer was permitted to borrow up

to 85% of its eligible accounts receivable, inventory, and other assets, pursuant to the Credit

Agreement. As a condition precedent, Eugenia required Debtors to extend an unconditional

guaranty of Computer's obligations under the Credit Agreement. In January 2003, Eugenia also

became a shareholder of Computer. (B000413).

On May 5, 2005, Mr. Glaser, the managing member of the general partner of the Debtors'

manager, notified Mr. Hassels-Weiler (who controlled Eugenia and Casita) of "potential

accounting misstatements at AMC Computer" that form the basis for this lawsuit. *In re AMC

Inv'rs*, 637 B.R. at 52. (*See* B000235). As a result, "on May 6, 2005, Eugenia declared a default

under the Credit Agreement, putting AMC Computer out of business." *In re AMC Inv'rs*, 637

3

B.R. at 52.

Mr. Hassels-Weiler directed both Eugenia's and Casita's actions from 2005 to the present and continues to direct and/or represent them today. (B000420–422; B000233–236; B000240). "It is undisputed that Casita knew of the facts which make up the basis for the current breach of fiduciary duty claims by May 2005." *In re AMC Inv'rs*, 637 B.R. at 58.

By May 2005, Computer was insolvent, and its board of directors voted to cease operations and to approve an assignment for the benefit of creditors. In response, Eugenia notified Computer that it was in default under the Credit Agreement, accelerated the outstanding obligations, and demanded immediate payment from Computer and from the Debtors under their guaranties.

From June 2005 through 2008, Eugenia and its affiliate, Casita, filed fourteen actions relating to Computer in multiple courts/jurisdictions, including the Supreme Court of the State of New York, the United States District Court for the Southern District of New York ("SDNY"), and the Delaware Bankruptcy Court, suing both directly and derivatively on behalf of Computer, and alleging fraud and breaches of fiduciary duty in connection with Computer's default under the credit agreement. The Defendants in these actions were the same as those in the Present Action: officers, directors, and/or shareholders of Computer.

### B.  The Prior Actions

These actions were filed at the direction of Mr. Hassels-Weiler (B000236–237) beginning on June 3, 2005, when Eugenia filed a complaint against Surinder Chabra, Computer's CEO, for fraud based on the same facts alleged in the complaints in the underlying Adversary Proceedings—allegations concerning Computer's insolvency and inability to pay the full amount due under the Credit Agreement. (B000524–527). Three days later, on June 6, 2005, Eugenia filed another complaint against Surinder Chabra for breach of fiduciary duty on the same basis. (B000547–548 (the "Second Chabra Complaint," and with the First Chabra Complaint, the

"Chabra Complaints")).

Less than two weeks later, on June 16, 2005, Eugenia filed a complaint against Appellee Robert Reale ("Reale") for fraud based on the same factual allegations. (B000553–554 (the "First Reale Complaint")). On June 22, 2005, Eugenia filed another complaint against Mr. Reale for breach of fiduciary duty based on the same factual allegations. (B000559–460 (the "Second Reale Complaint," and with the First Reale Complaint, the "Reale Complaints")).

On July 12, 2005, Eugenia sued certain of the Defendants and the Debtors as third-party defendants (in a complaint filed by Surinder Chabra, Narinder Chabra, and Parvinder Chabra) again predicated on the same dispute as the current proceedings. *In re AMC Inv'rs*, 637 B.R. at 61. (*See also* B000566 (the "Investors Complaint"))

On August 16, 2005, Eugenia sued Mr. Glaser (and certain directors of Computer) for breach of fiduciary duty based on the same underlying facts as the complaints in these proceedings (the "Prior Action") in the SDNY, suing derivatively on behalf of Computer. (B000568–577 (the "Board Complaint")).

On April 18, 2006, Eugenia sued Mr. Glaser for fraud based on the same facts alleged in the Complaints in these Adversary Proceedings. (*See* B000578–602 (the "Glaser Complaint")).

On July 11, 2006, the Chabra Complaints, Reale Complaints, Investors Complaint, and the Glaser Complaint were consolidated with the Board Complaint in the Prior Action. (*See* B000424–461 (the "Consolidated Complaint")).

As to the fraud claims, which Eugenia brought in its individual capacity, the allegations were that defendants "fraudulently induced Plaintiff to execute the Credit Agreement with AMC by making false, material statements of fact, and by intentionally concealing material facts about AMC's financial situation and history." *In re Eugenia VI Venture Holdings Ltd. Litigation,* 649 F. Supp. 2d 105, 108–09 (S.D.N.Y. 2008). Further, "Defendants perpetrated, aided, and abetted

5

fraud against Plaintiff by assisting, condoning, and directing the false statements made by subordinates to induce Plaintiff to lend more money to AMC ..." *Id.* In its derivative action for breach of fiduciary duty, Eugenia alleged that "as members of AMC's Board of Directors, 'de facto' chairman of the Board, and majority shareholder, Defendants owed fiduciary duties to AMC, and breached those duties, causing AMC to expand its debt and deepen its insolvency to its detriment and ultimate collapse." *Id.* at 109.

Following discovery and briefing, on December 15, 2008, the SDNY entered summary judgment against Eugenia in the Prior Action, dismissing all actions in a single judgment. *In re Eugenia VI Venture Holdings, Ltd Litig.*, 649 F. Supp. 2d 105, 121 (S.D.N.Y. 2008). The SDNY held that Eugenia did not show either that its reliance on defendants' representations was reasonable, or that it was damaged by defendants' alleged fraud. As to breach of fiduciary duty, Eugenia's claims failed, as a matter of law, because it could not prove damages. The SDNY reasoned that deepening a company's insolvency does not, on its own, demonstrate that the company has been damaged. To survive summary judgment on breach of fiduciary duty, Eugenia had to show that defendants deepened Computer's insolvency in breach of a separate duty, e.g., fiduciary duty. The facts that Eugenia introduced did not demonstrate breach of fiduciary duty, and Defendants' actions might have been consistent with reasonable business judgment, rather than bad faith. *See id.* at 125-26. The SDNY further held that:

> The factual record leaves open no question that [Eugenia] had in its possession an abundance of information and unobstructed access to much more, and knew enough about AMC's precarious finances to warrant at least minimal scrutiny before relying blindly on the totals Defendants represented on the face of the borrowing base certificates. [Eugenia's] reliance was unreasonable, and [Eugenia's] claims to fraud under the Credit Agreement fail as a matter of law.

*Id.* at 121.

The Second Circuit affirmed the SDNY's judgment in 2010: "We agree with the district

6

court's conclusion that Eugenia's derivative claims for breach of fiduciary duty fail as a matter of

law because Eugenia failed to raise a genuine issue of material fact as to damages." *Eugenia VI*

*Venture Holdings, Ltd. v. Glaser,* 370 F. App'x 197, 199 (2d Cir. 2010).  The opinion continues:

> Eugenia failed to adduce sufficient evidence to raise a genuine issue of
> material fact as to damages despite arguing that defendants-appellees
> caused the destruction of AMC and 'rendered the company incapable of
> paying its debts, and substantially increased those debts.'  That is, at the
> time the parties entered the Credit Agreement, AMC was already insolvent.
> As a result, Eugenia cannot demonstrate that thereafter defendants-
> appellees' mismanagement rendered the corporation insolvent. Eugenia's
> derivative fiduciary claims thus fail.

*Id*.  In addition, Eugenia's claims for fraud failed as a matter of law because, "Eugenia suffered no

out-of-pocket loss."  *Id*.

Eugenia brought several other causes of action against Defendants in New York state

courts.  On June 6, 2005, at the direction of Mr. Hassels-Weiler (B000237), Eugenia filed a

complaint against Investors and Investors II, seeking payment under the guaranties of the Credit

Agreement following Eugenia's declaration of default.  *In re AMC Inv'rs*, 637 B.R. at 60.  (*See*

B000603–608 (the "First Guaranty Complaint")).  On September 8, 2005, Eugenia voluntarily

dismissed that lawsuit due to lack of subject matter jurisdiction.  *Id*.  The same day, Eugenia filed

its second lawsuit against the Debtors regarding the guaranties.  *Id.*  (*See* B000609–623 (the

"Second Guaranty Complaint")).  Given that the Debtors are mere holding companies who were

required by Eugenia (as lender to Computer) to have no assets, no employees, and do nothing but

hold stock in Computer, the Debtors did not contest liability.  *In re AMC Inv'rs*, 637 B.R. at 60.

(B000326, B000339 (Credit Agreement, §§ 3.8 & 6.5)).

On March 23, 2006, the Supreme Court of New York entered judgment on the guaranties

against the Debtors.  On July 27, 2007, after Defendants successfully appealed the amount of the

judgment, the court entered an amended judgment on the guaranties against Debtors for $10.7

million.  *Id*. at 60–61.  (*See* B000462–464 (Amended Judgment)).  Defendants filed a notice of

appeal of the amended judgment on August 17, 2007, and that appeal was set for oral argument on October 10, 2008.

### C.   Bankruptcy Litigation

On September 30, 2008, ten days before oral argument, Eugenia filed involuntary petitions for relief against Investors and Investors II, more than three years after Mr. Hassels-Weiler, Casita, Eugenia, and Debtors all had notice of the matters that are the subject of the complaints in the Present Action.  The Bankruptcy Court entered orders for relief on June 5, 2009.

On June 3, 2011, the Bankruptcy Court granted Eugenia, as Debtors' sole creditor, derivative standing to pursue causes of action against Defendants on behalf of the Debtors.  The same day, Eugenia filed a complaint on behalf of each Debtor, initiating these two Adversary Proceedings.  The complaint alleges that Defendants breached their fiduciary duties of good faith, due care, and loyalty to Debtors by instituting, directing, and/or failing to discover and prevent massive fraud by the board and management of Computer.  (*See* APP000923–938).[2]  Eugenia alleges, "Computer's governance was marked by widespread improprieties and irregularities that contributed to Computer's deteriorating financial condition.  Defendants actively initiated and directed these improprieties, or took no action to prevent or halt them."  (APP000926).  Many of the supporting facts are identical to those that were raised in pleadings before the SDNY.

Defendants answered together (Adv. D.I. 44), raising the affirmative defenses of issue and claim preclusion.  Defendants argued that the prior federal litigation before the SDNY and the Second Circuit should bar the Present Action.  In addition, Defendants asserted statute of limitations and *laches* defenses.  (*Id.* at 10).  Eugenia subsequently filed two motions for partial summary judgment.  In the first motion, Eugenia sought partial summary judgment, on behalf of

---

[2] All adversary docket references are to *Eugenia VI Venture Holdings, Ltd. v. MapleWood Holdings LLC*, Adv. Proc. No. 11-52317-JTD, cited herein as "Adv. D.I. __."

Investors II only, as to Defendants' timeliness defenses based on the statute of limitations and laches. (Adv. D.I. 145). The second motion addressed Defendants' collateral estoppel (issue preclusion) and *res judicata* (claim preclusion) defenses, which were based on the prior SDNY litigation. (Adv. D.I. 149).

The Bankruptcy Court issued an opinion, *see In re AMC Inv'rs, LLC*, 524 B.R. 62 (Bankr. D. Del. 2015), and later entered an Order and Final Judgment in favor of Defendants, dismissing the underlying complaints with prejudice based on the statute of limitations defense. The Bankruptcy Court ruled that: (i) Delaware's three-year statute of limitations applies; (ii) Debtors' claims accrued in May 2005; (iii) Eugenia did not bring this action until June 2011 such that Debtors' claims are time-barred absent tolling; and (iv) none of the tolling doctrines apply because "Eugenia clearly knew about Defendants' conduct by June 2005, when it commenced [the Prior Action]." *See id.* 80-81.

D.     **The First Appeal**

On appeal, I reversed and remanded the case on "extremely limited" grounds. *In re AMC Inv'rs, LLC*, 551 B.R. 148, 155 (D. Del. 2016):

> With respect to tolling doctrines that are recognized by Delaware, the Bankruptcy Court applied the proper standard for purposes of the statute of limitations analysis. The statute begins to run "upon the discovery of facts constituting the basis for the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of such facts.

*Id.* at 154-55 (citations omitted). However, I also held that the "determination that none of Delaware's tolling doctrines are available to Debtors was incorrect to the extent that this determination was based solely on Eugenia's knowledge... Eugenia's knowledge is not imputed to the Debtors for purposes of the statute of limitations analysis." *Id.* at 155. Defendants appealed my ruling to the Third Circuit, which dismissed the appeal for lack of jurisdiction. *In re AMC*

*Investors, LLC*, 2016 WL 9412513 (3d Cir. Oct. 19, 2016).

### E.    The Opinion on Remand

On remand, the parties engaged in additional discovery, and Defendants moved for summary judgment on the merits as well as on their timeliness defenses, *res judicata*, and collateral estoppel. *In re AMC Inv'rs*, 637 B.R. at 55 & n.43. On January 27, 2022, the Bankruptcy Court entered the Order granting Defendants' motion for summary judgment. *Id.* at 51. In a thorough 41-page Opinion, the Bankruptcy Court held that Eugenia's claims were time-barred under Delaware's three-year statute of limitations governing breach of fiduciary duty claims. The Bankruptcy Court held it undisputed that Casita—a member of Investors—"knew of the facts that make up the basis for the current breach of fiduciary duty claims by May 2005." *Id.* at 58. Whether Casita's knowledge may be imputed to Investors II was unclear, but such a determination was unnecessary because regardless of such an imputation, "the Debtors were directly on notice of the facts giving rise to those actions within the applicable statutes of limitations such that their claims are time-barred." *Id.* at 60. The Bankruptcy Court further held that Eugenia's claims regarding fraud and breach of fiduciary duty at Computer are precluded under New York law based on the doctrines of *res judicata* and collateral estoppel based on prior adjudications by the Second Circuit. *See id.* at 66-70.

### F.    The Present Appeal

Eugenia filed a timely notice of appeal of the Order with respect to each of the two Adversary Proceedings. (Civ. No. 22-179-RGA, D.I. 1; Civ. No. 22-180-RGA, D.I. 1). The appeals are fully briefed. (D.I. 19, 31, 41).[3] I did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process

---

[3] Hereinafter, all references to the dockets of these appeals are to *Eugenia VI Venture Holdings, Ltd. v. MapleWood Holdings LLC*, Civ. No. 22-179-RGA, which is cited as "D.I. __."

would not be significantly aided by oral argument.

## II.     JURISDICTION AND STANDARD OF REVIEW

Appeals from the Bankruptcy Court to this Court are governed by 28 U.S.C. § 158. District courts have jurisdiction to hear appeals "from final judgments, orders, and decrees." 28 U.S.C. § 158(a)(1).   According to Eugenia, the Bankruptcy Court erred in granting summary judgment on the basis of Defendants' affirmative defenses of statute of limitations, *res judicata*, and collateral estoppel.   This Court reviews a grant of summary judgment *de novo*.   *Rosen v. Bezner*, 996 F.2d 1527, 1530 & n.2 (3d Cir. 1993).

## III.    ANALYSIS

### A.     No Dispute of Material Fact as to When Debtors Obtained Notice

The parties agree that Delaware's three-year statute of limitations applies to Eugenia's breach of fiduciary duty claims.   *See In re Tyson Foods, Inc.*, 919 A.2d 563, 584 (Del. Ch. 2007). The parties further agree that the alleged wrong—Defendants' mismanagement of Computer— occurred from January 2003 through May 2005.   *See In re AMC Inv'rs*, 551 B.R. at 152.   As correctly framed by the Bankruptcy Court, "Because the alleged wrong here occurred between January 2003-May 2005 and the Complaints were not filed until June 3, 2011, the claims are time barred absent tolling of the statute of limitations."   *In re AMC Inv'rs*, 637 B.R. at 57-58.

There are three recognized tolling doctrines: equitable tolling, inherently unknowable injuries, and fraudulent concealment.   These doctrines prevent the limitations period from running until an entity is on "inquiry notice" of its claims, i.e., "such time that persons of ordinary intelligence and prudence would have facts sufficient to put them on inquiry notice which, *if pursued*, would lead to the discovery of the injury."   *In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *7 (Del. Ch. July 17, 1998), *aff'd*, 725 A.2d 441 (Del. 1999).   As the Bankruptcy Court explained, for all three doctrines, the statute of limitations "begins to run upon the discovery of

facts constituting the basis for the cause of action *or* the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of such facts." *In re AMC Inv'rs,* 637 B.R. at 56-57 (quoting *Vichi v. Koninklijke Philips Electronics N.V.*, 2009 WL 4345724, at *17 (Del. Ch. Dec. 1, 2009)). In other words, "no theory will toll the statute beyond the point where the plaintiff was objectively aware, or should have been aware, of facts giving rise to the wrong.'" *Id.* at 57 (quoting *In re Tyson,* 919 A.2d at 584). The narrow issue before the Bankruptcy Court on remand was "when the Debtors knew, or should have known, of the facts underlying the Complaints for purposes of determining whether to toll the statute of limitations." *Id.*

As Eugenia admits, "Debtors would have had to obtain inquiry notice no sooner than September 30, 2005 for their claims to be timely." (D.I. 19 at 22).[4] The Bankruptcy Court ultimately held that "the Debtors discovered, or should have discovered, the existence of facts to put them on inquiry notice of the basis of these lawsuits by September 8, 2005"—i.e., the filing of the Second Guaranty Complaint—"at the latest." *In re AMC Inv'rs,* 637 B.R. at 61. This holding foreclosed application of all three of Delaware's tolling doctrines; it is the subject of Eugenia's appeal.

The Bankruptcy Court observed that it is likely that the Debtors were aware of the facts underlying these Adversary Proceedings in or around June or July 2005, when Eugenia filed the First Guaranty Complaint against Debtors seeking payment under the guaranties of the Credit Agreement following Eugenia's declaration of default. *In re AMC Inv'rs*, 637 B.R. at 60 n.80. Viewing the facts in a light most favorable to Eugenia, however, and giving Eugenia the benefit of

---

[4] Under the Bankruptcy Code, if the statute of limitations "has not expired before the date of the filing of [a] petition," then it is automatically extended at least "two years after the final order for relief." 11 U.S.C. § 108(a). Because I agree that September 8, 2005 is the very latest that the Debtors could have known of the facts underlying this lawsuit, 11 U.S.C. § 108(a) is inapplicable (given that Eugenia filed the involuntary petitions on September 30, 2008).

all reasonable inferences, the Bankruptcy Court held, "the undisputed facts establish that the Debtors had direct knowledge of the facts underlying these breach of fiduciary duty claims by or around September 8, 2005, at the *very latest*"—*i.e.*, as of the filing of the Second Guaranty Complaint. *Id.* at 60. The Bankruptcy Court cited the undisputed fact that "Eugenia filed several lawsuits against these Debtors in New York premised on the very facts that encompass its current claims in order to recover on the Debtors' unconditional guaranty in connection with the Credit Agreement." *Id.* In the Second Guaranty Complaint, Eugenia asserted, "On May 6, 2005, representatives of AMC informed plaintiff that AMC had knowingly submitted false borrowing certificates," and that "[u]pon learning of AMC's fraud, ... plaintiff notified AMC of its default of the Credit Agreement ..." *Id.* With respect to this suit, the Debtors 'conceded liability but opposed the amount of damages sought by Eugenia,' thereby demonstrating their active participation in the lawsuit." *Id.* (quoting *In re AMC Inv'rs*, 406 B.R. 478, 481 (Bankr. D. Del. 2009) (denying motions to dismiss involuntary petitions)).

According to Eugenia, the Bankruptcy Court erred because Eugenia's direct and derivative suits on behalf of Computer did not put Debtors on inquiry notice of these claims. First, Eugenia argues that Debtors were not on notice because the claims in the Present Action were not made in the Prior Action. Second, Eugenia argues that inquiry notice can be imputed to an LLC only through the knowledge of a blameless agent or member, and the only individuals who could have obtained inquiry knowledge on their behalf were their managing agents (i.e., Defendants) and their members, who are not blameless agents.

### 1. Debtors Had Inquiry Notice No Later than September 8, 2005

Eugenia urges that I reverse the Bankruptcy Court's holding that Debtors obtained inquiry notice of their claims—notice of "facts ... which, if pursued, would lead to the discovery of the injury," *In re Dean Witter*, 1998 WL 442456, at *7, at the latest, on September 8, 2005, when the

Second Guaranty Complaint filed. *In re AMC Inv'rs*, 637 B.R. at 60–61. According to Eugenia, this holding was erroneous because "public filings trigger inquiry notice only where they include facts indicating that a particular wrongful act has occurred and suggesting a need for further investigation." (D.I. 19 at 30 (citing *In re Fruehauf Trailer Corp.*, 250 B.R. 168, 189–92 (D. Del. 2000)). "While the New York actions may have indicated that Defendants were mismanaging AMC Computer—implicating Eugenia's rights under the Credit Agreement and AMC Computer's own fiduciary rights—that does not necessarily suggest that Defendants breached separate fiduciary duties to Debtors by failing to protect them from incurring liability under the Guaranty." (*Id.* at 30-31). But, as the Bankruptcy Court observed,

> Eugenia filed a lawsuit against these Debtors on June 6, 2005 to recover on the guaranty based on the same factual predicate [as the Present Action]. Thus, the Debtors cannot claim that their risk of ever being exposed on the guaranty was slim or unknown until after September 2005 when they were already named as defendants in a suit by Eugenia to recover on the guaranty. Such an argument is nonsensical.

*In re AMC Inv'rs*, 637 B.R. at 65-66. I agree. Eugenia further argues that while it is true that "[d]isclosure of wrongful acts in publicly filed documents … put a plaintiff on inquiry notice of the wrongful acts," those publicly filed documents must include facts demonstrating that the plaintiff itself has or may reasonably have a claim. (D.I. 41 at 7-8 (quoting *In re Fruehauf Trailer*, 250 B.R. at 189–92)). Eugenia argues that the Prior Action "concerned only Eugenia and AMC Computer's claims, and alleged only that Glaser had been grossly negligent in managing AMC Computer." *Id.* at 8. According to Eugenia, "the first time a publicly filed document alleged that Glaser had committed fraud was in April 2006" and "only at that point would the publicly filed lawsuits have provided Casita—and potentially Investors—with direct knowledge that it had a possible claim." *Id.*

Eugenia essentially argues that Debtors were not on notice on September 8, 2005 because the precise claims in this suit were not made in the Second Guaranty Complaint or in the Prior

Action.  In other words, because only gross negligence actions had been filed against Glaser, and no actions alleging fraud, Debtors could not have been on inquiry notice of a possible breach of fiduciary duty claims.  As the Bankruptcy Court recognized, that is not the standard for inquiry notice under Delaware law: "[A] plaintiff is on inquiry notice when the information underlying plaintiff's claim is readily available."  *In re Dean Witter*, 1998 WL 442456, at *8.  So as the Bankruptcy Court correctly held, it is irrelevant whether Eugenia or any other entity filed these specific claims in 2005.  *See In re AMC Inv'rs*, 637 B.R. at 61 (citing *In re AMC Inv'rs*, 524 B.R. at 81).  The relevant fact, instead, is when Debtors became aware of the factual basis for the claims in these proceedings, and the factual basis for this suit is the same as that set forth in the Second Guaranty Complaint and in the Prior Action.  The complaints alleging accounting fraud at Computer were more than sufficient to alert Debtors that their fiduciaries may have breached their own duties.

## 2.    Notice Was Properly Imputed to the Debtors

Eugenia further asserts that the Bankruptcy Court erred in determining that both Debtors obtained inquiry notice no later than September 8, 2005 because Investors II lacked the capacity to receive any notice.  Eugenia argued below that there is "no support ... for the contention that corporate entities are automatically imbued with knowledge of the allegations made against them."  *In re AMC Inv'rs*, 637 B.R at 61 n.86.  According to Eugenia, Debtors, as LLCs, could obtain

inquiry notice only "through [their] human agents"[5] and only by a "blameless agent."[6]  (D.I. 19 at 24).  As Debtors had no employees, Eugenia argues, the only individuals who could have obtained inquiry notice on their behalf were their managing agents (i.e., Defendants) and their members, who are not blameless agents. "Investors II, unlike Investors, did not have even one innocent member who could have obtained knowledge on its behalf." (D.I. 19 at 28). "Thus, even if Eugenia's suit against Debtors ... was sufficient to notify them of their fiduciary claims, Investors II lacked any capacity to receive that notice." (*Id.*)  According to Eugenia, Defendants have identified no case establishing that LLCs can have knowledge absent that of an innocent agent. (D.I. 41 at 3-4).  Likewise, however, Eugenia cites no authority to support its contrary position.

I need not weigh in on Investor II's innocent agent theory, because the Bankruptcy Court did not base its decision solely on the existence of Eugenia's suit against Debtors, but rather on Debtors' participation in that suit.  As the Bankruptcy Court explained:

> The Court relies on the fact that the Debtors were active participants in the September 8, 2005 New York state action, and were, thus, obviously aware of the facts underlying that action.  Were it the case that, for example, Eugenia received its judgment by way of default and the Debtors were never served with process or not on notice of the New York State action, the Court would likely find that the Debtors were unaware of the facts

---

[5] For this proposition, Eugenia quotes *In re Am. Int'l Grp., Consol. Deriv. Litig.*, 976 A.2d 872, 889 (Del. Ch. 2009), which does not discuss the imputation of knowledge or notice to LLCs (or discuss LLCs at all), but merely notes that corporations act through their human agents. *Id.* ("a corporation must act through its human agents, and that if those agents act in an ultra vires capacity and injure the corporation, those agents should bear responsibility to the entity."). Eugenia further cites *ASB Allegiance Real Estate Fund v. Scion Breckenridge Managing Member, LLC,* 2012 WL 1869416, at *15 (Del. Ch. May 16, 2012) for the "general rule that knowledge of an officer or director of a corporation will be imputed to the corporation," but that case also does not discuss LLCs or whether some other act—such as service of a complaint on an LLC containing "notice of facts giving rise" to claims such as these—may impute notice to the LLC.

[6] Eugenia again cites *In re Am. Int'l Grp.* in support of the contention that inquiry notice can be imputed to an LLC only through the knowledge of a blameless agent or member. (D.I. 19 at 24 (citing *Am. Int'l Grp.*, 976 A.2d at 889, 891 n.50)).  But that case states, "[K]nowledge is generally not imputed 'if the agent acts adversely to the principal in a transaction or other matter, intending to act solely for the agent's own purposes or those of another person.' " The case does not apply the principle in the context of an LLC.

> underlying this action at that time.  However, that is not the case.  It is clear
> the Debtors knew of the facts underlying the New York action in September
> 2005 since they actively participated in that litigation.

*In re AMC Inv'rs*, 637 B.R at 61 n.86.  I agree that Debtors became aware of the factual basis for

the claims in these proceedings no later than on September 8, 2005.  Accordingly, the tolling

doctrines do not apply.

### B.      No Dispute of Material Fact as to the Existence of a Tolling Agreement

A party may contractually agree to toll the statute of limitations against it.  *See Hanna v.*

*Motiva Enters., LLC*, 839 F. Supp. 2d 654, 669 (S.D.N.Y. 2012).  According to Eugenia,

Defendants and Debtors agreed to toll the limitations period starting in February 2006.

Defendants disputed the existence of a tolling agreement, and no signed agreement has ever been

produced.  The Bankruptcy Court observed that, at the time of the Opinion, litigation had been

ongoing since June 3, 2011: "Accordingly the parties have had nearly eleven years to exchange

discovery with respect to a controlling tolling agreement."  *In re AMC Inv'rs*, 637 B.R. at 62.

Indeed, prior to issuing the Opinion, the Bankruptcy Court required production of certain

privileged materials, including the draft tolling agreements.  *See id.* at n.100.  Based on its review,

the Bankruptcy Court granted summary judgment on the evidentiary record, which "merely

establishes that there were drafts and negotiations back and forth with regards to a tolling

agreement, but that one was never agreed upon."  *Id.* at 63.  According to Eugenia, even if the

statute of limitations began to run prior to October 2005, there is "substantial evidence that

Defendants and Debtors agreed to toll the limitations period starting in February 2006," and the

Bankruptcy Court "erred by disregarding evidence of a binding agreement between the parties."

(D.I. 19 at 39 (citing APP002030–2125).

As the Bankruptcy Court correctly explained, "At the summary judgment stage, once the

movant has produced evidence to show that the material facts are not at issue, the non-movant

bears the burden of establishing the existence of a material issue of fact." *In re AMC Inv'rs*, 637

B.R. at 62 (citing *Moore v. Sizemore*, 402 A.2d 679, 681 (Del. 1979). Defendants relied on an

affidavit by their attorney, Mr. Miller, stating, "While the attorneys to various defendants in the

past litigation discussed entering into a potential tolling agreement as part of our defense of that

litigation during February and March 2006, that draft agreement was never executed." (B000114).

Thus while Mr. Miller acknowledged that there were ongoing negotiations with respect to a tolling

agreement, his sworn statement establishes that one was never finalized. When the burden shifted

back to Eugenia to establish an issue of material fact as to the existence of the agreement, Eugenia

cited various email exchanges and drafts which did not meet its burden of establishing a disputed

material issue of fact.

According to Eugenia, the Bankruptcy Court erroneously concluded that the tolling

agreement was not binding due to the lack of a signed copy of the agreement in the record. *See In

re AMC Inv'rs,* 637 B.R. at 64. "Even though the final written 'Tolling and Joint Defense

Agreement' was not signed, that does not render it nonbinding as a matter of law," according to

Eugenia. (D.I. 19 at 39). Rather, New York law recognizes that an unsigned agreement is binding

where "there [i]s literally nothing left to negotiate or settle." *Hanna*, 839 F. Supp. 2d at 668. To

determine whether the parties intended to be bound by an unsigned agreement, Eugenia argues,

courts look to "(1) the language of the agreement; (2) the context of the negotiations; (3) the

existence of open terms; (4) partial performance; and (5) the necessity of putting the agreement in

final form." *Universal Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*, 1999 WL 771357, at

*5 (S.D.N.Y. Sept. 29, 1999).

The confidential draft tolling agreements and related correspondence were filed under seal

by the parties. (D.I. 22; *see* D.I. 22-5 (APP001632–1859); D.I. 22-7 (APP002030–2125); D.I. 22-8

(APP002126–2157); D.I. 22-13 (APP002268–2269); D.I. 37 (B000757–983)). Those documents

do not show a genuine issue of material fact as to the existence of a tolling agreement, nor do they

show, as Eugenia argues, that "the parties had settled on and agreed to all material terms,

including to protect their communications under the joint defense doctrine and to toll the statute of

limitations for claims against each other." (D.I. 19 at 40 (citing D.I. 22-5 (APP001632–1859)).

Eugenia primarily relies on an email exchange in February 2009 where Mr. Miller states that the

parties "definitely agreed to a standstill" (APP001634), but a standstill agreement is not a tolling

agreement, and that same email exchange indicates that the standstill was with respect to claims

for "indemnification and contribution," not claims for breach of fiduciary duty.  Moreover,

contrary to Eugenia's position that the record before the Bankruptcy Court contained "substantial

evidence that Defendants and Debtors agreed to toll the limitations period starting in February

2006," the record reflects communications discussing revisions to a tolling agreement from March

2007.  (APP002014–2029, APP002128–2157 (3/9/07 e-mails from Brian Miller)).  I find no error

in the Bankruptcy Court's determination that there was no dispute of material fact as to the

existence of a tolling agreement.

### C.      Equitable Tolling Does Not Save these Claims

As the Bankruptcy Court explained, "In Delaware, courts will employ equitable tolling

following a breach of fiduciary duties where manifest justice would otherwise result." *In re AMC*

*Inv'rs*, 637 B.R. at 64.  "[T]he doctrine of equitable tolling stops the statute [of limitations] from

running while a plaintiff has reasonably relied upon the competence and good faith of a fiduciary."

*Id.* (quoting *In re Am. Int'l Grp.*, 965 A.2d 763, 813 (Del. Ch. 2009), *aff'd sub nom., Teachers'*

*Ret. Sys. of La. v. PricewaterhouseCoopers LLP*, 11 A.3d 228 (Del. 2011)).  "Delaware courts

may also equitably toll the statute of limitations 'where the plaintiff in some extraordinary way has

been prevented from asserting his or her rights.' "  *Id.* (quoting *Oshiver v. Levin, Fishbein, Sedran*

*& Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994)).  "If equitable tolling applies, 'the statute of

limitations is tolled until ... [p]laintiffs were objectively aware of the facts giving rise to the wrong, i.e., on inquiry notice.'" *Id.* (quoting *In re Am. Int'l Grp.*, 965 A.2d at 813 (citing *In re Dean Witter,* 1998 WL 442456 at *6))).

Thus, the doctrine only tolls the statute of limitations "until an investor knew or had reason to know of the facts constituting the wrong." *In re Dean Witter*, 1998 WL 442456, at *6. The Bankruptcy Court found this doctrine inapplicable, reasoning that because the Debtors had knowledge of the fraud at Computer, they should have had knowledge of their own claims as well. *In re AMC Inv'rs*, 637 B.R. at 64–66.

Eugenia argues the Bankruptcy Court's decision ignores that the Debtors were left to rely on Defendant Glaser, who allegedly breached his fiduciary duties to the Debtors by fraudulently keeping Computer afloat to enrich himself through management fees, and by representing himself as blameless by claiming to be working to identify the source of the fraud so he could remedy it. (D.I. 19 at 33-36). Like the Bankruptcy Court, I am also "left puzzled" as to *what* the Debtors were relying on. *In re AMC Inv'rs*, 637 B.R. at 64-65. As the Bankruptcy Court explained, "Defendant Glaser informed Hassels-Weiler that there was potential fraud at Computer in May 2005, which caused Eugenia to declare default under the Credit Agreement." *Id.* at 65. "At that point, regardless of how Glaser was painting the picture, innocent or not, Hassels-Weiler was put on notice of potential fraud, and the Debtors, as guarantors of AMC Computer's obligations, should have been aware of the facts underlying this litigation, given that Eugenia's declaration of default exposed them to liability." *Id.* "Moreover," the Bankruptcy Court explained, "when Hassels-Weiler started filing lawsuits in June 2005, the Debtors were or should have been aware of Glaser's role, given the allegation that Glaser controlled AMC Computer, which was allegedly submitting false borrowing base certificates." *Id.* I agree that equitable tolling does not apply as Debtors "knew or had reason to know of the facts constituting the wrong" no later than September

8, 2005. *In re IH 1, Inc. Miller v. Kirkland & Ellis LLP*, 2016 WL 6394296, at *17 (Bankr. D. Del. Sept. 28, 2016) ("Delaware courts have 'consistently rejected' equitable tolling when the facts underlying the claim were disclosed in public[ly] filed documents.") (citing *In re Marvel Entm't Grp.,* 273 B.R. 58, 74 (D. Del. 2002)).

For the foregoing reasons, Eugenia's claims are barred by the statute of limitations, the Order will be affirmed, and there is no need for me to examine whether these claims are also barred by the doctrines of *res judicata* and/or collateral estoppel. Taking into consideration the long history of this litigation, however, and to move it forward as much as possible toward a final resolution, I address Defendants' additional affirmative defenses below.

### D.   *Res Judicata* **Bars This Action**

As the Bankruptcy Court explained, "The purpose of the doctrine of *res judicata* is 'to promote finality.'" *In re AMC Inv'rs*, 637 B.R. at 66 (quoting *In re DeFlora Lake Dev. Assocs.*, 571 B.R. 587, 594 (Bankr. S.D.N.Y. 2017)). Under the doctrine of *res judicata*, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Id.* Under New York law,[7] *res judicata* is an affirmative defense if: "1) the earlier decision was a final judgment on the merits; 2) plaintiffs in both suits are the same or in privity; and 3) the claims raised are the same." *Id.* (quoting *Penthouse Media Grp., Inc. v. Pachulski Stang Ziehl & Jones, LLP,* 406 B.R. 453, 458 (S.D.N.Y. 2009)). Eugenia agrees this is the test for *res judicata* and that the first requirement is satisfied. (D.I. 19 at 42 ("the prior actions resulted in final judgments")). Eugenia disagrees with the Bankruptcy Court's findings with respect to the other two requirements. (*See id.* at 42-47).

---

[7] *In re AMC Inv'rs,* 524 B.R. at 70 ("As the earlier action came into the District Court under diversity jurisdiction, the parties agree that New York preclusion law governs.").

### 1.   The Privity Element Is Satisfied

"It is fundamental that a judgment in a prior action is binding not only on the parties to that action, but on those in privity with them." *Green v. Santa Fe Indust., Inc.*, 514 N.E.2d 105, 108 (N.Y. 1987). To determine whether privity exists, the court "eschews strict reliance on formal representative relationships in favor of a more flexible consideration." *Slocum ex. rel. Nathan "A" v. Joseph "B,"* 588 N.Y.S.2d 930, 931 (N.Y. App. Div. 1992). Parties in privity include "those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly co-parties to a prior action." *Watts v. Swiss Bank Corp.*, 265 N.E.2d 739, 743 (N.Y. 1970).

Applying this standard, the Bankruptcy Court found that Eugenia (on behalf of Debtors in these Adversary Proceedings) is in privity with Eugenia (on behalf of Computer in the Prior Action) for three reasons. First, "Eugenia has been acting on its own behalf despite filing suit derivatively; first, on behalf of AMC Computer; second, on behalf of the Debtors currently." *In re AMC Inv'rs*, 637 B.R. at 68. The Bankruptcy Court explained that "the practical reality is that Eugenia seeks to recover on its $10.7 million judgment. Thus, under that scenario, Eugenia 'is in privity with … Eugenia.'" *Id.* (quoting *In re AMC Inv'rs*, 524 B.R. at 74). I agree that facts presented here reflect "substantial identity of the incentives of the earlier party with those of the party against whom *res judicata* is asserted." *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 346 (2d Cir. 1995). As the Bankruptcy Court explained, "It is clear that the New York lawsuits and this lawsuit stem from the alleged fraud that occurred at AMC Computer, Eugenia's declaration of default under the Credit Agreement, and Eugenia's mission to monetarily recover as a result of that default." *In re AMC Inv'rs,* 637 B.R. at 61. And, Eugenia's recovery under the

Credit Agreement is the purpose of both actions. [8] *See In re AMC Inv'rs*, 524 B.R. at 72 (citing *Ex rel. Spitzer v. Applied Card Sys., Inc.*, 11 N.Y.3d 105, 894 N.E.2d 1 (2008)).

Second, "looking at each action as truly derivative, the [Bankruptcy Court] found that there is privity between AMC Computer (on whose behalf Eugenia filed suit derivatively in New York) and the Debtors (on whose behalf Eugenia filed suit derivatively here) under New York's 'totality of the circumstances' test and under the test which asks, 'whether a plaintiff's interests were represented in the earlier action.'" *In re AMC Inv'rs*, 637 B.R. at 68 (quoting *In re AMC Inv'rs*, 524 B.R. at 75-77)). Indeed, as the sole creditor of the Debtors, every action Eugenia takes on behalf of Debtors is taken for Eugenia's own benefit. The Bankruptcy Court found that:

> As shareholders, Debtors' interest in the present case is to recover for the alleged mismanagement and eventual collapse of AMC Computer. Since Eugenia had previously brought suit as a shareholder for the alleged mismanagement of AMC Computer, both actions were brought to vindicate the interests of AMC Computer shareholders.

*Id*. at 68 n.141 (cleaned up); *see Parkoff v. Gen. Tel. & Elecs. Corp.*, 425 N.E.2d 820, 824 (N.Y. 1981) ("a judgment rendered in [a derivative] action brought on behalf of the corporation by one shareholder will generally be effective to preclude other actions predicated on the same wrong brought by other shareholders"); *Lee v. Marvel Enters., Inc.*, 765 F. Supp. 2d 440, 456 (S.D.N.Y. 2011) (same). In its briefing, Eugenia attempts to makes a hyper-technical distinction that "Debtors' incentive to sue was to vindicate their rights to be properly managed in good faith," not in order to vindicate "AMC Computer's right to be managed in its own best interests." (D.I. 19 at 49). As noted, however, New York law clearly "eschews strict reliance on formal representative relationships in favor of a more flexible consideration." *Slocum*, 588 N.Y.S.2d at 931.

---

[8] As Defendants point out, in addition to being the sole secured creditor of Computer in the Prior Action, Eugenia's computation of damages for the breach of fiduciary duty claim in the Prior Action only included amounts owed to Eugenia. (*See* B0000088–108). Thus, in both the direct and derivative portions of the Prior Action, only Eugenia would have obtained a recovery had it been successful (just as here).

The "alternative test" for privity "focuses on whether a party, though not formally involved, nevertheless exercised control over the earlier litigation." *In re AMC Inv'rs*, 637 B.R. at 68. The Bankruptcy Court found that Mr. Hassels-Weiler controlled the prior proceedings, controls the present proceedings, and used the same counsel in both. *Id.* The Bankruptcy Court concluded that his "high level control of both litigations is sufficient to satisfy New York's alternative test of privity." *Id.* at 68-69; *see Green*, 514 N.E.2d at 108 (noting "courts have also precluded parties from raising claims previously litigated when the party to be precluded can be said to have controlled the conduct of the prior action to further his own interests"); *Ruiz v. Comm'r Dep't of Transp. of City of N.Y.*, 858 F.2d 898, 903 (2d Cir. 1988) (noting that it is of "singular significance" to a privity analysis when parties shared the same attorney). Eugenia argues that there is "no basis for concluding that *Debtors* 'controlled the litigation' in New York." (D.I. 19 at 46). While this may be true, it is Mr. Hassels-Weiler's control of both sets of litigation that is relevant in the analysis and which demonstrates the unity of interest and identity between the plaintiffs. *See Green,* 514 N.E.2d at 109 (significance lies not merely in the use of the same attorney, but that attorneys were directed by the same party in both cases). In other words, the same person controlled both actions through the same attorneys.

## 2.    The Present Action Raises the Same Claims As the Prior Action

The inquiry as to whether the claims asserted in the Prior Action and Present Action are sufficiently identical is not limited to only those claims that were brought or could have been brought. The "transactional analysis" used by New York courts is much broader, providing that "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *O'Brien v. City of Syracuse*, 429 N.E.2d 1158, 1159 (N.Y. 1981); *see Yoon v. Fordham Univ. Faculty & Admin. Ret. Plan*, 263 F.3d 196, 201 (2d Cir. 2001).

Eugenia argues that the claims in the Prior Action and the Present Action are not the same, and thus *res judicata* does not apply.  I disagree.  As Defendants point out, each allegation in the Prior Action and the Present Action begins and ends with a single, solitary fact—Computer defaulted on its loan with Eugenia.  Indeed, the Prior Action alleged that fraudulent acts and breaches of fiduciary duty were committed by Defendants in connection with the operation of Computer, which caused Computer to default on its loan to Eugenia.  *See In re Eugenia VI,* 649 F. Supp. 2d at 108.  Similarly, the Present Action alleges that the same fundamental acts resulted in breaches of fiduciary duty by Defendants causing Computer to default on its loan to Eugenia which, in turn, triggered the Guaranty.  (B000010; B000013; B000017).  The difference between these two actions is the legal theory—direct and derivative on behalf of Computer in the Prior Action and derivative on behalf of the Debtors in the Present Action (with Eugenia as the sole beneficiary of any recovery in both actions).

Eugenia's main argument on appeal is that Computer and the Debtors are differently situated.  Eugenia maintains that "the claims were not motivated by the same underlying interests."  (D.I. 19 at 49).  Both actions, however, were motivated by Eugenia's interest in vindicating the rights of Computer shareholders.  Eugenia further asserts, "Debtors suffered entirely separate harms," and Debtors "seek different relief than that sought in the prior actions." (*Id.* at 48).  Both actions, however, concern Eugenia's recovery on the $10.7 million guaranty judgment.  Finally, Eugenia argues that the claims arise "under a separate source of rights," that Debtors "attack Defendants in an entirely different legal capacity," and that Debtors "invoke different facts showing why Defendants are liable."  (*Id.* at 48-49).  Under New York law, these distinctions are insufficient to prevent the application of *res judicata.  See Ferris v. Cuevas*, 118 F.3d 122, 126 (2d Cir. 1997) (barring claim based on different legal theory).

Based on the unity of interest and identity between the plaintiffs, and the fact that the

25

claims asserted in the Present Action arise "out of the same transaction or series of transactions" as

the Prior Action, the Bankruptcy Court correctly concluded that *res judicata* bars Eugenia's

claims. Based on the long history of litigation between these parties, I agree that this case also

"presents strong policy considerations favoring the application of *res judicata, i.e.*, the need for

finality in the resolution of legal disputes, consistency in results, the avoidance of vexatious

litigation and judicial economy in an overburdened court system." *Slocum*, 588 N.Y.S.2d at 932.

As Defendants point out, "This is not a case where [plaintiffs] have had no chance to pursue their

claims aggressively." (D.I. 31 at 42 (quoting *Ruiz*, 858 F.2d at 904)).

### E.    Collateral Estoppel Bars This Action

As the Bankruptcy Court explained, "Under New York law, '[c]ollateral estoppel, or issue

preclusion, precludes a party from relitigating in a subsequent proceeding or action an issue that

was raised in a prior action or proceeding and decided against that party or those in privity.'" *In re

AMC Inv'rs*, 637 B.R. at 69 (quoting *Bruno v. Bank of New York*, 101 N.Y.S. 3d 124, 127 (2019)).

Here, the Bankruptcy Court held that "the doctrine of collateral estoppel bars the Plaintiffs from

relitigating the issue of AMC Computer's insolvency, which is fatal to their breach of fiduciary

duty claims." *Id.*

There is no disagreement as to whether the Bankruptcy Court applied the correct legal

standard. Collateral estoppel applies where there is (1) privity between the parties in both actions,

(2) "if the issue in the second action is identical to an issue which was raised, necessarily decided

and material in the first action," and (3) "the plaintiff had a full and fair opportunity to litigate the

issue in the earlier action." *Bruno*, 101 N.Y.S. 3d at 127. It is the "party seeking the benefit of

collateral estoppel," who has the "burden of demonstrating the identity of issues, whereas the party

attempting to defeat its application has the burden of establishing the absence of a full and fair

opportunity to litigate the issue in the prior action." *Id.*

### 1.    The Privity Element Is Met

The parties agree, "The analysis of privity under collateral estoppel is the same as under *res judicata.*"  *In re AMC Inv'rs*, 637 B.R. at 69.  As set forth herein, plaintiffs in the Prior Action are in privity with Eugenia in the Present Action.

### 2.    The Identical Issue Element Is Satisfied

With respect to whether the issue in the Present Action is identical to an issue which was raised, necessarily decided, and material in the Prior Action, the Bankruptcy Court has twice determined that this element was met.  As the Bankruptcy Court explained, "the Second Circuit made a factual finding that AMC Computer was already insolvent when it entered the Credit Agreement, and that this finding was 'actually determined' and 'necessary' to the Court's dismissal of Eugenia's breach of fiduciary duty claims."  *In re AMC Inv'rs*, 637 B.R. at 69 (quoting *In re AMC Inv'rs*, 524 B.R. at 79).  The Bankruptcy Court reasoned, "If the company was already insolvent, then it is immaterial whether it was this set of defendants or the previous that was responsible for mismanaging AMC [Computer] ... [t]he bottom line is that, as decided by the Second Circuit, AMC's insolvency predated the [Credit] Agreement .... Thus, the problem of causation and damages persists."  *Id.*

Eugenia argues that Computer's insolvency is irrelevant to its claims that "Defendants breached their fiduciary duty by entering the Guaranty to keep AMC Computer afloat, engaging in self-dealing rather than honoring their fiduciary obligations to avoid needlessly triggering the Guaranty, and failing to take any action to recover Debtors' losses once the Guaranty was triggered."  (D.I. 19 at 52).

I disagree.  The Second Circuit's determination in the Prior Action that Computer was insolvent from at least January 2003 onward is decisive of the Present Action.  If Computer was insolvent at that time, then when Debtors signed the Guaranty, as required by Eugenia prior to

making its loan, Debtors were already liable for all amounts under the Credit Agreement and were insolvent themselves because their sole permitted asset was stock in insolvent Computer. As Defendants point out, this creates an insurmountable causation issue for all of Eugenia's breach of fiduciary duty claims. (D.I. 31 at 44). "If Debtors were already insolvent and liable for all amounts due under the Guaranty at the time of their execution, then Defendants' subsequent alleged wrongful acts could not have caused 'Debtors [to be] injured and damaged by the loss of over $10.7 million upon incurring a judgment pursuant to the Credit Agreement's Guaranty,'" as asserted in the complaint. *Id.* at 44-45 (quoting B000019–20). As Defendants point out, "To the extent '[t]he Debtors were injured or damaged,' they were injured or damaged at the moment they signed the Guaranty—at Eugenia's insistence." (*Id.* at 45 (quoting complaint)). Additionally, Eugenia's allegations that Computer could not pay its debts to Eugenia and was liquidated as a result of Defendants' purported fiduciary breaches (B000010) are not actionable, as Computer was, at all times relevant, unable to pay its debts. Moreover, the Present Action seeks to prove that "Defendants breached their fiduciary duties to Debtors by instituting, directing and/or failing to discover and prevent a *massive fraud* by the Board and management *of Computer.*" (B000010). The Second Circuit has already found no actionable fraud by the board and management of Computer. *See Eugenia VI Venture Holdings, Ltd. v. Glaser,* 370 F. App'x at 199 ("Eugenia's claims for fraudulent inducement, fraud, and aiding and abetting fraud fail as a matter of law"). The Bankruptcy Court properly held that there is an identity of issues which were necessarily decided in the Prior Action and are decisive of the Present Action.

### 3. The Full and Fair Opportunity Element is Satisfied

I find no error in the Bankruptcy Court's determination that Eugenia had a full and fair opportunity to contest the earlier proceeding. In evaluating whether a party has had its day in court, New York courts consider nine factors: "the size of the claim, the forum of the prior

litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law, and foreseeability of future litigation." *Schwartz v. Public Adm'r of Bronx County*, 246 N.E.2d 725, 729 (1969). It is the burden of the party arguing against preclusion to establish the absence of a full and fair opportunity. *Id.* at 730. Applying the *Schwartz* factors, the Bankruptcy Court held that Debtors had "their day in Court and had the opportunity to contest the prior litigation." *In re AMC Inv'rs*, 637 B.R. at 70. Among other things, the Bankruptcy Court relied on the fact that the same party and counsel control both actions, the amount involved in the New York action was significant, and the same factual allegations were "at the center" of both actions. *Id.* Even though Eugenia bears "the burden of demonstrating the absence of a full and fair opportunity to contest the prior determination," *City of New York v. College Point Sports Assoc., Inc.*, 876 N.Y.S.2d 409, 417 (N.Y. App. Div. 2009), they do not challenge the Bankruptcy Court's findings. Eugenia argues that because "Debtors were precluded from pursuing their own rights in the prior actions, Debtors did not have a full and fair opportunity to litigate." (D.I. 19 at 53; D.I. 41 at 25). This argument does not pertain to any of the *Schwartz* factors, and I agree with Defendants that Eugenia is conflating the identical issue requirement with the full and fair opportunity to litigate requirement.

### F. Alleged Post-Prior Action Claims

Eugenia argues that certain acts which form the basis of Debtors' breach of fiduciary duty claims "post-date the New York actions" and that, accordingly, neither the statute of limitations nor claim or issue preclusion apply to bar those claims. (*See* D.I. 19 at 22-23, 50-51). This is a restatement of Eugenia's position that the Defendants' "delay tactics were an essential part of [their] scheme to avoid liability, because absent a bankruptcy filing, the Debtors' creditors would not have had standing to bring an action on behalf of the Debtors." (*Id.* at 22 ("[Defendants]

precluded Debtors from obtaining a judgment that would have allowed them to immediately seek recourse from Defendants and other wrongdoers."); *id.* at 34 ("And the involuntary petitions were necessary for Eugenia to obtain standing to sue, as Eugenia would not otherwise have been able to sue derivatively.")  Indeed, each of the specific post-September 2005 acts identified by Eugenia relates to either Defendants' efforts to appeal the March 2006 judgment that Eugenia obtained against the Debtors in the guaranty action or in defending the involuntary bankruptcy cases.  The alleged acts did not amount to a breach of Defendants' alleged fiduciary duties.  Among other things, Defendants could not have violated their purported fiduciary duties by failing to cause Debtors to pursue claims against the Defendants which have already failed as a matter of law.

## IV.   CONCLUSION

I find no error in the Bankruptcy Court's determinations that the Present Action is barred by the applicable statute of limitations and the doctrines of *res judicata* and collateral estoppel.  I will therefore affirm the Order.  A separate order will be entered.